UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS WAYNE WYRICK,<br><br>　　　　Petitioner,<br><br>　v.<br><br>ANTHONY HEDGPETH, Warden,<br><br>　　　　Respondent. | Case No.: 1:10-cv-00022-LJO-JLT<br><br>FINDINGS AND RECOMMENDATIONS TO DENY SECOND AMENDED PETITION FOR WRIT OF HABEAS CORPUS (Doc. 10)<br><br>ORDER DIRECTING THAT OBJECTIONS BE FILED WITHIN TWENTY DAYS |

　　　　Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

　　　　Petitioner is in custody of the California Department of Corrections and Rehabilitation ("CDCR") serving an indeterminate sentence of forty years and eight months-to-life, pursuant to a August 3, 2007 judgment of the Superior Court of California, County of Mariposa (the "Superior Court"). Petitioner was convicted of committing a lewd act upon a fourteen or fifteen year old child (Cal. Pen. Code § 288 (c)(1), and four counts of committing a lewd act upon a child under the age of fourteen (Cal. Pen. Code § 288(a)). (Doc. 10, p. 1).

　　　　Following his conviction, Petitioner pursued a direct appeal in the California Court of Appeals, Fifth Appellate District (the "5th DCA"). (Doc. 21, Lodged Documents ("LD") 1, 2, & 3).

Subsequently, the 5th DCA, in an unpublished decision, affirmed Petitioner's conviction and sentence. (LD 4; Doc. 1, Attach.). Petitioner then filed a petition for review in the California Supreme Court, which was denied on February 11, 2009. (Doc. 10, p. 2; LD 6).

On January 6, 2010, Petitioner filed the instant petition. (Doc. 1). Petitioner filed a first amended petition on May 5, 2010 (Doc. 6), and a second amended petition on June 26, 2010. (Doc. 10). Respondent's answer to the second amended petition was filed on November 8, 2010. (Doc. 20). Petitioner did not file a Traverse.

Respondent concedes that the sole ground for relief in the petition has been fully exhausted. (Doc. 20, p. 7).

## FACTUAL BACKGROUND

The Court adopts the Statement of Facts in the 5th DCA's published/unpublished decision:

During voir dire the court asked the prospective jurors, "Anyone here closely related to anyone in law enforcement?" When Juror No. 60074 was called to the jury box, she acknowledged hearing the questions the court had previously asked. When the court asked, "Any of those questions you feel you should respond to?" (sic ), she replied "No." In response to further questioning, Juror No. 60074 provided personal information including that she was currently engaged.

On August 7, 2007, four days after the jury convicted Wyrick in this matter, the prosecutor wrote a letter to defense counsel advising him that she had learned Juror No. 60074 married Nick Gilbert in May 2004 and that they briefly lived together as a married couple for three months. The letter also stated that Gilbert was the son of Betty Halencak and the stepson of Tom Halencak. Betty Halencak was the secretary of Mariposa County District Attorney Robert Brown. Tom Halencak had been a Mariposa County Sheriff's Deputy from 1990 to May of 2003 and a district attorney investigator from May 2003 through February 2007. In a statement to a district attorney investigator, Juror No. 60074 stated that the above relationships did not affect her performance as a juror, she answered truthfully when asked during voir dire whether she had a close relationship with someone in law enforcement, and that she was never really close to her ex-husband's family.

On August 14, 2007, Wyrick filed his motion for a new trial alleging that Juror No. 60074 willfully hid her relationship to the Halencaks in order to be seated on the jury. The motion had the prosecutor's letter attached to it.

On August 17, 2007, the prosecutor filed a response which stated that Betty Halencak separated from Tom Halencak in December 2005 and initiated divorce proceedings on May 24, 2006. The response also stated that while obtaining the dissolution records for Juror No. 60074, the prosecutor was informed that the juror's current fiancée, Eric Paige, was the nephew of Fred Paige who formerly worked as a Mariposa County Sheriff's deputy for many years and

was currently employed part-time with the Mariposa Superior Court in court security. Eric Paige also had an aunt who was a court reporter for the Mariposa Superior Court and was married to Jim Allen, the current Mariposa County Sheriff and Paige's deceased grandfather was the Mariposa County Sheriff from 1975 to 1983.

The prosecution's response also contained a statement from Tom Halencak stating that he was not close to Juror No. 60074 and had not talked to her since her divorce from his stepson.

On August 21, 2007, at a hearing on Wyrick's motion Juror No. 60074 testified that during voir dire, when the court asked the prospective jurors whether any of them was closely related to anyone in law enforcement, she interpreted the question as asking about a spouse or a blood relative like a father or brother. She did not think the court was asking about her former relationship with her former in-laws.

Juror No. 60074 further testified that she married Nick Gilbert in May 2004 and lived with him for three months after that. She was never close to Tom Halencak and never spoke to him about his work or Wyrick and she did not know anything about the case before it started. She never talked to Betty Halencak about her employment and was unaware she worked as a secretary for the Mariposa County District Attorney. Juror No. 60074 believed her fiancée, Eric Paige, had two uncles, Jim Allen and Fred Paige, who were involved in law enforcement. Allen is married to Fred's sister LeeAnn Allen who is a court reporter. She did not view a court reporter as part of law enforcement and did not think about her relationship with the Halencaks or the Paiges when the court asked if she was closely related to anyone in law enforcement. None of these relationships influenced her decision in Wyrick's case.

During voir dire Juror No. 60074 was present when a nephew of Tom Halencak was questioned and heard the court ask the prosecutor whether Tom Halencak had worked on Wyrick's case. This, however, did not prompt her to disclose her former relationship to Halencak because she did not consider her relationship to him to be close.

After hearing counsels' arguments, the court denied the motion finding that Juror No. 60074 did not deliberately fail to disclose any material information during voir dire, that she was credible and unbiased, and that there was no clear showing of prejudice to Wyrick and no juror misconduct. The court also found that Juror No. 60074 did not have a close relationship with Tom Halencak.

(LD 4, pp. 2-4).

## DISCUSSION

I.  Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States

Constitution.  The challenged conviction arises out of the Mariposa County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II.     Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless he can show that the state court's adjudication of his claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d);  Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003);  Williams v. Taylor, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams v. Taylor, 529 U.S. 326, 405-406 (2000). A state court decision involves an "unreasonable application" of clearly established federal law "if the state court applies [the Supreme Court's precedents] to the facts in an objectively unreasonable manner."  Id., quoting Williams, 529 U.S. at 409-410; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)(*per curiam*).

Consequently, a federal court may not grant habeas relief simply because the state court's decision is incorrect or erroneous; the state court's decision must also be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 511 (2003) (citing Williams v. Taylor, 529 U.S. at 409).  In

4

Harrington v. Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. If fairminded jurists could so disagree, habeas relief is precluded. Richter, 131 S.Ct. at 786. As the United States Supreme Court has noted, AEDPA's standard of "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law" is "difficult to meet," because the purpose of AEDPA is to ensure that federal habeas relief functions as a "'guard against extreme malfunctions in the state criminal justice systems,'" and not as a means of error correction. Richter, 131 S.Ct. at 786, quoting Jackson v. Virginia, 443 U.S. 307, 332, 99 S.Ct. 2781, n. 5 (1979)(Stevens, J., concurring in judgment). The Supreme Court has "said time and again that 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Cullen v. Pinholster, 131 S.Ct. 1388, 1410-1411 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Richter, 131 S.Ct. at 787-788.

Moreover, federal "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 131 S.Ct. at 1398 ("This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at the same time–i.e., the record before the state court.")

The second prong of federal habeas review involves the "unreasonable determination" clause of 28 U.S.C. § 2254(d)(2). This prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500 (when reviewing a state court's factual determinations, a "responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment"). A

state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id. ; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

The AEDPA also requires that considerable deference be given to a state court's factual findings. "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. at 340. Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law. See Lambert v. Blodgett, 393 F.3d 943, 976-077 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state court decided the petitioner's claims on the merits but provided no reasoning for its decision, the federal habeas court conducts "an independent review of the record...to determine whether the state court [was objectively unreasonable] in its application of controlling federal law." Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2002); see Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). Where the state court denied the petitioner's claims on procedural grounds or did not decide such claims on the merits, the deferential standard of the AEDPA do not apply and the federal court must review the petitioner's 's claims de novo. Pirtle v. Morgan, 313 F.3d at 1167.

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness). Some constitutional errors, however, do not require that the petitioner demonstrate prejudice. See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S.

648, 659 (1984).  Furthermore, where a habeas petition governed by the AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard.  Avila v. Galaza, 297 F.3d 911, 918 n. 7 (9th Cir. 2002);  Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir. 2009).

      III.    Review of Petitioner's Claims.

The instant petition itself alleges a single ground for relief, i.e., that Petitioner was denied his right to a fair trial when the Superior Court refused to grant a new trial on the basis of juror misconduct.  For the reasons set forth below, the Court rejects Petitioner's sole ground for relief and recommends that the petition be denied with prejudice.

      A.    The 5th DCA's Decision.

> Wyrick contends that the following circumstances indicate that Juror No. 60074 intentionally withheld material information on bias when she answered the court's question whether she was closely related to anyone in law enforcement: 1) Juror No. 60074 did not disclose her relationship to Tom Halencak when one of his nephews who was also a member of the venire, disclosed that he was related to Halencak; 2) other jurors interpreted some of the voir dire questions more broadly and provided more tangential answers on the issue of bias than did Juror No. 60074; and 3) Juror No. 60074 did not disclose that the court reporter who recorded the new trial motion hearing was the aunt of her fiancée. Thus, according to Wyrick, the court abused its discretion when it concluded that Juror No. 60074 did not engage in misconduct and denied his motion for a new trial. We will reject these contentions.
>
> "We begin with the basic proposition that one accused of a crime has a constitutional right to have the charges against him or her determined by a fair and impartial jury. [Citations.] A prospective juror's ability to be fair and impartial is explored during the process of voir dire. The significance of this process has been explained by our Supreme Court as follows:
>
> " ' "Voir dire examination serves to protect [a criminal defendant's right to a fair trial] by exposing possible biases, both known and unknown, on the part of potential jurors. Demonstrated bias in the responses to questions on voir dire may result in a juror's being excused for cause; hints of bias not sufficient to warrant challenge for cause may assist parties in exercising their peremptory challenges. The necessity of truthful answers by prospective jurors if this process is to serve its purpose is obvious." [Citation.]
>
> " 'A juror who conceals relevant facts or gives false answers during the voir dire examination thus undermines the jury selection process and commits misconduct. [Citations.]' [Citations.]

7

> "Where a party seeks a new trial based upon jury misconduct, the court must undertake a three-step inquiry. First, the court must determine whether the evidence presented for its consideration is admissible. [Citations.] Declarations of jurors may be used to show that a juror concealed bias or other reason for disqualification by providing false answers during voir dire. [Citations.] When considering these declarations, the trial court must take great care not to overstep the boundaries established by Evidence Code section 1150. As pertinent, this section provides: 'Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined.' [Citation.] This statute has thus been found to allow consideration of evidence of ' "overt acts'-that is, such statements, conduct, conditions, or events as are "open to sight, hearing, and the other senses and thus subject to corroboration"....' [Citation.] As a result, Evidence Code section 1150 may be violated 'not only by the admission of jurors' testimony describing their own mental processes, but also by permitting testimony concerning statements made by jurors in the course of their deliberations. In rare circumstances a statement by a juror during deliberations may itself be an act of misconduct, in which case evidence of that statement is admissible. [Citation.] But when a juror in the course of deliberations gives the reasons for his or her vote, the words are simply a verbal reflection of the juror's mental processes. Consideration of such a statement as evidence of those processes is barred by Evidence Code section 1150." [Citation.] [¶] ... [¶]

> "Finally, if misconduct is found to have occurred, the court must determine whether the misconduct was prejudicial. [Citation.] Once misconduct has been established, prejudice is presumed; reversal is required unless the reviewing court finds, upon examination of the entire record, there is no substantial likelihood that any juror was improperly influenced to the defendant's detriment. [Citation.]

> "The trial court's determination on a motion for new trial ""'rests so completely within [its] discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears.''" [Citation.]" (People v. Duran (1996) 50 Cal.App.4th 103, 111-113.)

Here, pursuant to Evidence Code section 1150 Juror No. 60074's statements and testimony that her decision in this case was unaffected by her relationships with her ex-husband's family and fiancée's family were not admissible. Nevertheless, the record contains other substantial evidence that supports the court's finding that Juror No. 60074 did not intentionally withhold information during voir dire. The court asked the prospective jurors if anyone was "closely related" to anyone in law enforcement but neither the court nor either counsel defined "closely related." At the hearing on Wyrick's motion, Juror No. 60074 testified she interpreted this phrase to mean someone related by blood or a spouse. In view of the above circumstances, her interpretation of this phrase was reasonable. Further, there was no evidence presented that she was aware of the employment status of her fiancée's uncles and aunts at the time. Nevertheless,

assuming she was, her interpretation of the phrase "closely related" provides a reasonable explanation for her failure to tell the court during voir dire that two of her fiancée's uncles were employed in law enforcement. This is particularly true because she did not have a legal relationship to her fiancée's close or extended family when she was selected as a juror and no evidence was presented at the hearing on Wyrick's motion disclosing the extent of her relationship to them. Her failure to disclose that her fiancée's aunt was a court reporter was reasonable for the additional reason that the aunt's employment as a court reporter did not make her a part of law enforcement.

Juror No. 60074's interpretation of the court's question also explains why she did not disclose that her former husband's stepfather worked in law enforcement. As to her former mother-in-law, Juror No. 60074's testimony that she never spoke to her about her employment and was unaware that she was the secretary to the Mariposa County District Attorney is uncontradicted in the record. Additionally, the court's question was phrased in the present tense whereas her relationship with her former husband and in-laws ended approximately three years earlier. Thus, with respect to her former in-laws, her response was not only reasonable, it also was clearly accurate.

Juror No. 60074's failure to disclose her prior relationship to the Halencak's when their nephew disclosed his relationship to Tom Halencak does not alter this conclusion. Juror No. 60074's legal relationship with the Halencak's was not encompassed within her interpretation of a "close relation," which we have determined was reasonable.

Wyrick cites several juror's responses to voir dire questions to contend that other jurors did not interpret the questions as narrowly as Juror No. 60074 and provided "more tangential indicia of potential bias." According to Wyrick, this indicates Juror No. 60074 intentionally failed to disclose material information. Wyrick is wrong.

Not all jurors responded to every question asked during voir dire and there is no way to know whether any juror's failure to respond to a particular question resulted from a narrow interpretation of the question. Thus, even assuming some juror's interpreted the voir dire questions more broadly than Juror No. 60074 interpreted the question whether she was "closely related" to anyone in law enforcement, it does not follow from this that she was untruthful in her response to this question. In any event, a review of the examples of juror answers cited by Wyrick to support this contention discloses that most of these answers were responsive to the questions asked and did not involve a broad interpretation of the court's questions.

We also reject Wyrick's contention that Juror No. 60074's failure to tell the court that the court reporter at the hearing on his motion was his fiancée's aunt shows that Juror No. 60074 intentionally withheld material information. The main issue at this hearing was whether Juror No. 60074 withheld information during voir dire regarding any close relationships she had with people involved in law enforcement, not whether anyone at the hearing on Wyrick's motion had any relationship to her. And, as noted earlier, a court reporter is not part of law enforcement. Further, although the court reporter was her fiancée's aunt, Juror No. 60074 did not yet have a legal relationship with her and there is no evidence that Juror No. 60074 was familiar with the appearance of her fiancée's aunt or recognized her as the court reporter reporting the proceedings. Additionally, Juror No. 60074's role as a witness was to answer

> questions and she was not asked whether she was related to the court reporter prior to the prosecutor disclosing this information. Given these circumstances, Juror No. 60074's failure to tell the court that the court reporter was her fiancée's aunt is not surprising and of no import. Accordingly, we reject Wyrick's contention that the court abused its discretion when it denied his motion for a new trial.

(LD 4, pp. 5-9).

B. <u>Petitioner Was Not Denied His Constitutional Right To A Fair Trial</u>.

Initially, the Court agrees with Respondent that, to the extent that it is based on the state court's errors in considering and ruling on the new trial motion, Petitioner's claim fails to present a federal question. In an attachment to the federal petition, Petitioner appears to assert that the state court abused its discretion, misapplied the state test for granting a new trial, and incorrectly weighed the relevant facts when deciding Petitioner's new trial motion. (Doc. 10, pp. 37-38, Ex. C).

"The criteria for a trial court in granting or denying a new trial are matters of state law. As such, an incorrect application would not be grounds for federal habeas relief, unless the alleged error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" <u>Ward v. Wolff</u>, 499 F.Supp. 1129, 1131 (D.Nev. 1980)(*quoting* <u>Hill v. United States</u>, 368 U.S. 424, 428, 82 S.Ct. 468 (1982). Generally, issues of state law are not cognizable on federal habeas. <u>Estelle v. McGuire</u>, 502 U.S. 62, 67, 112 S.Ct. 475 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' "), *quoting* <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780, 110 S.Ct. 3092 (1990); <u>Gilmore v. Taylor</u>, 508 U.S. 333, 348-49, 113 S.Ct. 2112 (1993) (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas"). Indeed, federal courts are bound by state court rulings on questions of state law. <u>Oxborrow v. Eikenberry</u>, 877 F.2d 1395, 1399 (9th Cir.)(1989). Further, "the availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution." <u>Sawyer v. Smith</u>, 497 U.S. 227, 239, 110 S.Ct. 2822 (1990), *quoting,* <u>Dugger v. Adams</u>, 489 U.S. 401, 409, 109 S.Ct. 1211 (1989). Thus, to the extent that Petitioner's claim is premised upon the state court's misapplication of California law, it is not cognizable in these proceedings.

In any event, Petitioner's claim is without merit. "In all criminal prosecutions," state and federal, "the accused shall enjoy the right to . . . trial . . . by an impartial jury," U.S. Const., Amends. 6 and 14; see Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444 (1968); Irvin v. Dowd, 366 U.S. 717, 722, 81 S.Ct. 1639 (1961). "Even if only one juror is unduly biased or prejudiced, the defendant is denied his constitutional right to an impartial jury." Tinsley v. Borg, 895 F.2d 520, 523-524 (9th Cir. 1990). In reviewing a claim of juror misconduct, "[t]he test is whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial." United States v. Klee, 494 F.2d 394, 396 (9th Cir.1974). However, while the Supreme Court has never rejected the idea of implied juror bias, implied bias by a juror has rarely been applied. See United States v. Plache; 913 F.2d 1375, 1377 (9th Cir. 1990); Tinsley v. Borg, 895 F.2d at 527. "Only in extreme or extraordinary cases should bias be presumed." Plache; 913 F.2d at 1377, *quoting*, Tinsley, 895 F.2d at 527.

Moreover, the Constitution "does not require a new trial every time a juror has been placed in a potentially compromising situation." Smith v. Phillips, 455 U.S. 209, 217, 102 S.Ct. 940 (1982). The safeguards of juror impartiality, such as voir dire and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Id. Due process means only a jury capable and willing to decide the case solely on the evidence before it and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen. Id. Although it is generally preferred that a trial court hold an evidentiary hearing when allegations of juror misconduct arise, it is not always required, particularly when the court knows the exact scope and nature of the misconduct. See United States v. Halbert, 712 F.2d 388, 389 (9th Cir.1983); United States v. Hendrix, 549 F.2d 1225, 1227 (9th Cir.1977); see also United States v. McVeigh, 153 F.3d 1166, 1187 (10th Cir.1998).

The Ninth Circuit has recognized that to disqualify a juror for cause requires a showing of actual bias or implied bias; that is, "bias in fact, or bias conclusively presumed as a matter of law." United States v. Gonzalez, 214 F.3d 1109, 1111-12 (9th Cir.2000). There are three theories of juror bias based on a misstatement by a juror during voir dire: (1) McDonough-style bias (i.e., the juror fails to answer honestly and, had he answered correctly, the information would have provided a basis for a challenge for cause, see McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 104 S.Ct. 845

(1984)); (2) "actual bias, which stems from a pre-set disposition not to decide an issue impartially;" and (3) "implied (or presumptive) bias, which may exist in exceptional circumstances where, for example a prospective juror has a relationship to the crime itself or to someone involved in a trial, or has repeatedly lied about a material fact to get on the jury." Fields v. Brown, 503 F.3d 755, 766 (9th Cir.2007) (en banc).

If a juror failed to answer a voir dire question correctly, a petitioner may obtain a new trial by showing: (1) that the juror failed to answer honestly a voir dire question, and (2) that this undermined the impartiality of the petitioner's jury. See Dyer v. Calderon, 151 F.3d 970, 973 (9th Cir.1998) (en banc). The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of the trial. See McDonough, 464 U.S. at 556. Forgetfulness, for example, does not indicate lack of impartiality. See United States v. Edmond, 43 F.3d 472, 473-74 (9th Cir.1994) (no misconduct where district court found juror's testimony that he forgot about being victim of armed robbery truthful).

Although the state court engaged in an exhaustive analysis of this issue, which will not be repeated here, several points bear emphasis.  First, the trial judge's exercise of his or her responsibility to be "ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen," Smith, 455 U.S. at 217 n. 7, inherently involves the trial court's "appraisal of witness credibility and demeanor." Thompson v. Keohane, 516 U.S. 99, 111, 116 S.Ct. 457 (1995). In performing that function, the trial judge is best positioned to make decisions regarding credibility and demeanor; hence, the "judgment of the jurist-observer" has been given "presumptive weight" in these matter. Id.  Thus, juror impartiality is a factual issue that is within the statutory presumption of correctness. Id.; Wainwright v. Witt, 469 U.S. 412, 429 (1985); Tinsley, 895 F.2d at 525 ("findings of state trial and appellate courts on juror impartiality deserve 'a high measure of deference.'"); see Skilling v. United States, __U.S.__, 130 S.Ct. 2896, 2918 (2010)("reviewing courts are properly resistant to second-guessing the trial judge's estimation of a juror's impartiality….").

Here, Petitioner's claim fails because he has not shown (1) that Juror No. 60074 failed to honestly answer voir dire questions, and (2) that this failure undermined the impartiality of Petitioner's jury.  Although it is true that Juror No. 60074 did not mention her prior, and brief, marriage to the

1  stepson and son, respectively, of a former sheriff's deputy and the secretary to the District Attorney, or
2  that her current fiancé was the nephew of a former sheriff's deputy and a court reporter for the
3  Superior Court and that he was also related to several other individuals, both active and retired, in the
4  Sheriff's Department, there is no indication that she purposely concealed these facts or gave false
5  answers.
6        Juror No. 60074's questioning during voir dire was quite limited. When called to the jury box,
7  Juror No. 60074 was asked about her work, the number of children she had, and whether those
8  children would be cared for if she were selected to sit on the jury. (Reporter's Transcript ("RT")
9  184). Then the court asked her whether she had heard the questions asked by counsel of other jurors
10  and if there were "[a]ny of those questions you feel you should respond to?" (Id.). She replied in the
11  negative. (Id.). Defense counsel asked no questions of her and the prosecutor followed by asking
12  about the burden of proof and her understanding of the prosecution's burden. (Id.).
13        When asked by the trial court at the new trial hearing, Juror No. 60074 indicated that she had
14  understood the phrase "closely related" to mean either a spouse or blood relative, which would have
15  excluded any of the relationships mentioned above. Specifically, she understood the phrase to mean
16  "[l]ike blood relatives as far as a father, brother, if I was married, my husband." (RT 2421). She also
17  indicated that she volunteered the information about her fiancé and his family even though that
18  relationship did not technically fall within the ambit of the court's question about whether she was
19  "married." (RT 2422). She also indicated that, after the divorce, she was not close to her former
20  father-in-law or her ex-husband, that she never discussed law enforcement work with them, and that
21  she was unaware at the time of voir dire that her former mother-in-law worked for the District
22  Attorney. (RT 2423-2424). When asked by defense counsel whether hearing her ex-father-in-law's
23  name mentioned during voir dire in connection with Petitioner's case should have prompted her to
24  mention her former relationship with him, she replied, "No. I didn't have a close relationship with
25  him." (RT 2427).
26        The 5th DCA reviewed each relationship that Juror No. 60074 did not disclose and found
27  reasonable explanations for her silence in concluding that she was not intentionally deceptive. Thus,
28  for example, the state court concluded that Juror No. 60074's interpretation of "closely related" as

being a blood relative or spouse was reasonable.  This was especially so since the trial court had framed the question in the present tense, but the juror's questionable relationships stemmed either from her *former* spouse, to whom she was no longer legally related, or from her fiance, to whom she was not yet related.  Also, the juror's former marriage, though technically extending over several years, was, in reality of only three months' duration, when the two were actually living together as a married couple.  Subsequently, she had not remained close to her former in-laws. Moreover, the trial court never provided a formal definition for the phrase "closely related," thus leaving its construction and application to each juror.  Finally, the evidence presented at the new trial hearing was uncontroverted that Juror No. 60074 knew nothing of her former mother-in-law's work with the District Attorney, there was no evidence presented that she was aware of the employment status of her fiance's uncles and aunts at the time of trial, and her fiance's aunt's status as a court reported did not fit within the parameters of the voir dire question since a court reporter is not employed in law enforcement.  For all of these reasons, the state court's conclusion that Juror No. 60074 was not intentionally deceptive was reasonable.[1]

As to any potential bias or prejudice by Juror No. 60074, the 5th DCA found none.  "[A] petitioner is entitled to habeas relief only if it can be established that the constitutional error had 'substantial and injurious effect or influence in determining the jury's verdict.'"  Lawson v. Borg, 60 F.3d 608, 612 (9th Cir.1995), *quoting*, Brecht v. Abrahamson, 507 U.S. 619, 637 n. 9,113 S.Ct. 1710, 1722 n. 9 (1993).   The Ninth Circuit has found that whether a constitutional error is harmless is not a factual determination entitled to the presumption of correctness under 28 U.S.C. § 2254(d).  Lawson, 60 F.3d at 612; Marino v. Vasquez, 812 F.2d 499, 504 (9th Cir.1987).  Thus, this Court does not simply defer to the California court's finding that there was no prejudice.

---

[1] In his Petition for Review before the California Supreme Court, Petitioner relies heavily on the contrast between Juror No. 60074's silence, on the one hand, and the many disclosures of relationships, some quite attenuated, by other prospective jurors on the other hand.  However, the Court cannot know how those other jurors understood the phrase "closely related, " nor, indeed, does their understanding of that phrase or motivation for disclosing those relationships have any real relevance as to whether this particular juror was being intentionally deceptive and whether that deception prejudiced Petitioner. As the 5th DCA noted, the fact that one juror discloses something based on his or her understanding of "closely related" while another remains silent does not mean that the former is truthful and the latter deceptive: "Not all jurors responded to every question asked during voir dire and there is no way to know whether any juror's failure to respond to a particular question resulted from a narrow interpretation of the question."  (LD 4, p. 8).

1  Here, the 5th DCA acknowledged that, at the hearing on the motion for new trial, statements
2  and testimony by Juror No. 60074 that she was "unaffected by her relationships with her ex-husband's
3  family and fiancee's family" were inadmissible under California Evidence Code § 1150.  (Doc. 1,
4  Attach, p. 6).[2]  Because the inquiry at the motion for new trial was whether Juror No. 60074 had been
5  deceptive, and because the standard of review in the 5th DCA was abuse of discretion, neither state
6  court expressly addressed the question of whether the juror was biased or prejudiced.  Nevertheless,
7  considering the entire record, the Court believes the question is easily answered in the negative.

8  First, since no direct evidence was presented from Juror No. 60074 regarding whether she was
9  actually biased or prejudiced at the new trial hearing, any evidence on that topic is necessarily indirect.
10 Indeed, there is no indirect or circumstantial evidence that Juror No. 60074 was actually biased or
11 prejudiced against Petitioner, only surmise, conjecture, and innuendo.  On the other hand, clear and
12 reasonable inferences can be drawn from the record that Juror No. 60074 was *not* biased or prejudiced.
13 First, there is no indication that her relationship with her ex-husband and former in-laws was, at the
14 time of trial, a close one.  To the contrary, the period during which the two lived together was brief,
15 the former in-laws never disclosed their work to her on Petitioner's case, and she had not spoken with
16 her former father-in-law in several years.  Considering the often contentious nature of divorce itself, it
17 is plausible that, given this evidence, her relationship with her former husband and his family was not
18 particularly close and that their relationship would not reasonably predispose her against Petitioner's
19 cause.  Also, she stated affirmatively that her relationship with her former in-laws and ex-husband had
20 no influence on her decision in the case.  (2 CT 391-392; IX RT 2424).  Likewise, there is no evidence
21 that Juror No. 60074 had a close relationship with her future in-laws or that she even recognized her
22 fiancé's aunt as the court reporter in the proceedings.  And again, she testified that such relationships

---

[2] Cal. Evid. Code § 1150 provides as follows: "(a) Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined; (b) Nothing in this code affects the law relating to the competence of a juror to give evidence to impeach or support a verdict." Thus, § 1150 codifies existing California law permitting evidence of misconduct by a trial juror to be received but forbidding the reception of evidence as to the effect of such misconduct on the minds of the jurors. People v. Stokes, 103 Cal. 193 (1894). Subsection (b) follows long-standing California law that a juror is incompetent to give evidence as to matters that might impeach his verdict. People v. Gray, 61 Cal. 164 (1882).

15

had no influence on her as a juror.  (IX RT 2426).

Based on these factors, the Court cannot now conclude that the error, if any, in denying the motion for new trial had a "substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 637 & n. 9 (1993).[3]  Thus, the Court concludes that the state court adjudication was not contrary to nor an unreasonable application of clearly established federal law, and, accordingly, recommends that the second amended petition be denied on its merits.

## RECOMMENDATION

Accordingly, the Court **RECOMMENDS** that Petitioner's Second Amended Petition for Writ of Habeas Corpus (Doc. 10), be **DENIED** with prejudice.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within twenty (20) days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the Objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).

///

///

///

///

---

[3] In the hearing on the motion for new trial, defense counsel insisted that bias or prejudice was not the issue; rather, the constitutional issue was that, by remaining silent about her relationship with various individuals connected to Petitioner's case, Juror No. 60074 deprived the defense of the chance to exercise either a challenge for cause or a peremptory challenge.  (RT 2411-2416).  However, even assuming, arguendo, that a constitutional claim could be constructed from the fact that the juror's silence had the effect of precluding the defense from exercising a challenge for cause or peremptory challenge, this Court has already concluded that any error in the juror's failure to disclose her relationships was harmless, thus rebutting such a contention.

The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **February 22, 2013**            /s/ Jennifer L. Thurston
                                         UNITED STATES MAGISTRATE JUDGE